# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

**LYNN S. JOWERS,**

                                        **Plaintiff,**

            *- against -*

**LAKESIDE FAMILY AND CHILDREN'S
SERVICES**

                                        **Defendant.**

**03 Civ. 8730 (LMS)**

<u>DECISION and ORDER</u>

*Pro se* Plaintiff Lynn S. Jowers ("Plaintiff"), proceeding *in forma pauperis*, filed an

amended complaint against Defendant Lakeside Family and Children's Services ("Defendant")

alleging employment discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42

U.S.C. §§ 2000e – 2000e-17. Plaintiff maintains that the Defendant retaliated against him,

terminated his employment based upon his race, color and gender, and subjected him to an

abusive and hostile workplace environment. Plaintiff's Amended Complaint ("Pl's Compl.") at

¶¶4, 7. Defendant denies all of Plaintiff's claims. This matter is before me for all purposes,

including trial, on consent of the parties pursuant to 28 U.S.C. §636(c). Defendant has moved

for summary judgment on all of Plaintiff's claims under FED. R. OF CIV. PRO.56(b). Because

Plaintiff has failed to establish a genuine issue of material fact on any of his claims, I grant

Defendant's motion for summary judgment *in toto*.

## <u>BACKGROUND</u>

The parties do not dispute the following basic facts that are material to a decision in this

case.

Plaintiff was hired to work for the Defendant as a counselor for abused and underprivileged youth on December 1, 1997. Defendant's Rule 56.1 Statement of Undisputed Material Facts ("Def's Statement") at ¶1. Plaintiff remained employed and in good standing with the Defendant until September 12, 2002, Def's Statement at ¶2, when he was placed on a 90-day temporary probationary period, Def's Statement at ¶3.[1] Subsequent to his placement on probation, Plaintiff's supervisor expressed dissatisfaction with the Plaintiff's performance of his employment obligations and responsibilities and duties. Defendant's Notice of Motion ("Def's Notice of Mot"), Ex. M, Letter from Francine Palazza to Plaintiff Lynn Jowers, dated September 19, 2002 and Letter from Francine Palazza to Plaintiff Lynn Jowers, dated September 30, 2002. Plaintiff was then transferred to a different work location without a salary reduction or change in job title. Def's Statement at ¶5.[2] In January 2003, Plaintiff went on short-term disability leave, Def's Statement at ¶6, and returned to Defendant's employment in June 2003, Def's Statement at ¶7. Following his return to work, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on July 3, 2003, asserting that his placement on probation and workplace transfer were issued as a result of his race, color and gender. Pl's Compl. at ¶7. Plaintiff received a "right to sue" letter from the EEOC dated July 30, 2003, informing him that the EEOC was unable to establish a violation of Title VII's provisions, and that Plaintiff himself could file a cause of action in federal court at his election. Def's Notice of Mot., Ex. A, EEOC

---

[1] Defendant claims that the Plaintiff was placed on probation for his failure to work cordially with his co-workers. Plaintiff denies this reasoning, and contends he was placed on probation for complaining about harassing and disrespectful comments made by a co-worker. See Pls' Compl. at ¶8.

[2] Plaintiff claims to have had many of his responsibilities stripped from him subsequent to his transfer. See Def's Notice of Mot., Ex. D, Plaintiff's Deposition at 19, lines 6-12.

Dismissal and Notice of Rights Letter.

During Plaintiff's leave of absence – between January 2003 and June 2003 – Defendant instituted a fingerprinting policy on March 21, 2003, which applied to all staff members. Def's Notice of Mot., Ex. O, Memorandum from Joyce Carter to All Congregate Care and Residential Services Staff, dated March 21, 2003. The policy applied to all staff, regardless of hiring date, unless the employee already had been fingerprinted at the time of his or her hiring. Def's Notice of Mot., Ex. O, Memorandum from Joyce Carter to All Congregate Care and Residential Services Staff, dated March 21, 2003. Upon return to work from his leave of absence, Plaintiff was fingerprinted pursuant to the Defendant's March 21, 2003, directive. On or about August 1, 2003, Defendant received notice that the Plaintiff's fingerprint analysis and criminal background check yielded information that the Plaintiff had been arrested on January 1, 1996, for criminal sale of a controlled substance in or near school grounds, in violation of N.Y. PENAL LAW § 220.44, and that he pled guilty to criminal sale of a controlled substance in the fifth degree, N.Y. PENAL LAW § 220.31, on June 16, 1997.

Subsequent to receiving this information, the Defendant, pursuant to its company policy, confronted the Plaintiff with this information. Def's Notice of Mot., Ex. O, Letter from Joyce Carter to Robert M. Lederman, dated August 1, 2003. On his application for employment with the Defendant in December of 1997, Plaintiff stated that as of that time, he had not been convicted of a felony in the past seven years. Def's Notice of Mot., Ex. J, Application For Employment. When presented with this inconsistency, Plaintiff denied the validity of the information, but subsequently admitted to pleading guilty – as reported on the criminal report – though denying that he sold drugs on school property. Def's Notice of Mot., Ex. O, Letter from

Joyce Carter to Robert M. Lederman, dated August 1, 2003. Plaintiff's employment with the Defendant was terminated on August 1, 2003. Def's Notice of Mot., Ex. O, Letter from Joyce Carter to Robert M. Lederman, dated August 1, 2003.[3]

Plaintiff instituted the instant cause of action on August 28, 2003. See Docket Entry #2, Complaint. Pursuant to an Order dated November 5, 2003, Chief Judge Michael B. Mukasey directed that (1) the Plaintiff file an amended complaint within 60 days with Lakeside Family and Children's Services as the only named defendant, and (2) the Plaintiff provide additional information on his claims against the Defendant arising under Title VII of the Civil Rights Act of 1964.[4] Plaintiff filed an amended complaint on December 2, 2003. See Docket Entry #5, Amended Complaint.

## DISCUSSION

A.   Introduction

Plaintiff asserts that he has endured retaliation and was terminated from employment with the Defendant in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e – 2000e-17. Specifically, Plaintiff alleges that he was placed on probation and transferred to a different work site based upon his race, color and gender. Plaintiff also claims he was subjected to a hostile working environment, and ultimately terminated based upon his race, color and

---

[3] Defendant maintains that its basis for terminating the Plaintiff was the Plaintiff's failure to disclose his prior conviction on his employment application. Plaintiff denies that he was terminated because of this withholding of information, but rather because of his race, color and gender. Pl's Compl. at ¶8.

[4] In particular, Chief Judge Mukasey determined that Plaintiff had not pled with sufficient specificity how the Defendant discriminated against the Plaintiff based upon his race, color or gender. See Docket Entry #4, Sixty Day Order.

gender. Defendant moves for summary judgment on all of Plaintiff's claims alleging that

Plaintiff's probationary period and workplace transfer were the result of the Plaintiff's own

incompatibility with one of his co-workers. Moreover, Defendant denies subjecting Plaintiff to a

hostile workplace environment, and maintains that the Plaintiff was discharged from

employment because he falsified his employment application by omitting that he had been

arrested and pled guilty to a felony only months before applying for a job with the Defendant.

Because a review of the record leads me to determine that there exist no genuine issues of

material fact, I grant Defendant's motion for summary judgment in its entirety and dismiss all of

the Plaintiff's causes of action.

B.      Summary Judgment Standard

Pursuant to the Federal Rules of Civil Procedure, summary judgment "shall be rendered

forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex

Corp. v. Catrett, 477 U.S. 317, 320-23 (1986). "Upon any motion for summary judgment

pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice

of motion a separate, short, and concise statement, in numbered paragraphs, of the material facts

as to which the moving party contends there is no genuine issue to be tried. Failure to submit

such a statement may constitute grounds for denial of the motion." Local Civ. R. 56.1(a). A fact

is "material" when it may affect the outcome of a case under the governing substantive law.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is

"genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party.  Id.  A trial judge may, therefore, grant summary judgment only if there is no genuine

issue as to any material fact and if the moving party is entitled to judgment as a matter of law.

Id. at 250.  The inquiry performed is the threshold inquiry of determining whether there are any

genuine factual issues that properly can be resolved only by a finder of fact.  Id.  Moreover, the

Second Circuit has instructed that in employment discrimination cases, when reviewing a motion

for summary judgment where the employer's intent is at issue, summary judgment is only

appropriate when there is no "evidence in the record from which a jury could draw a reasonable

inference in favor of the non-moving party on a material fact . . . ."  Kerzer v. Kingly

Manufacturing, 156 F.3d 396, 400 (2d Cir. 1998).

Where a properly supported motion for summary judgment is made, the adverse

party "must set forth specific facts showing that there is a genuine issue for trial."  FED. R. CIV.

P. 56.  Under Local Rule 56.1(b), "the papers opposing a motion for summary judgment shall

include a correspondingly numbered paragraph responding to each numbered paragraph in the

statement of the moving party, and if necessary, additional paragraphs containing a separate,

short and concise statement of the material facts as to which it is contended that there exists a

genuine issue to be tried."  Local Civ. R. 56.1(b).  Summary judgment may be granted only "[i]f

after discovery, the nonmoving party 'has failed to make a sufficient showing on an essential

element of [its] case with respect to which [it] has the burden of proof.' "  Berger v. United

States, 87 F.3d 60, 65 (2d Cir. 1996) (quoting Celotex, 477 U.S. at 323) (alteration in original).

"The nonmoving party must have 'had the opportunity to discover information that is essential to

his [or her] opposition' to the motion for summary judgment."  Trebor Sportswear Co. v. The

Limited Stores, Inc., 865 F.2d 506, 511 (2d Cir.1989) (quoting Anderson, 477 U.S. at 250 n. 5).

Moreover, a court should "constru[e] the evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences in its favor." Mount Vernon Fire Ins. Co. v. Belize NY, Inc., 277 F.3d 232, 236 (2d Cir. 2002); Farias v. Instructional Sys., Inc., 259 F.3d 91, 97 (2d Cir. 2001); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 764 (2d Cir. 1998); see also Anderson, 477 U.S. at 261 n.2. Thus, "[o]nly when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." Cruden v. Bank of New York, 957 F.2d 961, 975 (2d Cir. 1992) (quoting H.L. Hayden Co. of New York, Inc. v. Siemans Med. Sys. Inc., 879 F.2d 1005, 1011 (2d Cir. 1989)).

A court should liberally construe a *pro se* complainant's pleadings because an individual who represents himself or herself often lacks the same training and expertise as an admitted member of the bar. See Haines v. Kerner, 404 U.S. 519, 520 (1972); Simmons v. Abruzzo, 49 F.3d 83, 87 (2d Cir. 1995). The Second Circuit has noted that this is especially important in cases alleging civil rights violations, such as this case. Weixel v. Board of Education of New York, 287 F.3d 138, 145-46 (2d Cir. 2002). As such, the court must read the Plaintiff's pleadings as broadly as possible so as to give them the most meaning and to "raise the strongest arguments that they suggest." Id. (quoting Mc.Pherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotation marks omitted)).

Because of this stringent rule interpreting *pro se* complaints, I conclude that Plaintiff has asserted three claims in his amended complaint, which consist of: (1) a claim for retaliation, (2) a claim for wrongful termination, and (3) a claim alleging a hostile work environment and

workplace harassment.[5]  Despite this generous interpretation of the Plaintiff's amended

complaint, I still conclude that Plaintiff has failed to establish any genuine issues of material fact

that could survive Defendant's motion for summary judgment.

C.      Plaintiff's Causes of Action

1.      Retaliation

In order to establish a prima facie cause of action for retaliation, the Plaintiff must

demonstrate that (1) he was engaged in a protected activity, (2) his employer knew about his

involvement in the protected activity, (3) his employer took an adverse action against the

Plaintiff, and (4) there is a causal nexus between the Plaintiff's participation in the protected

activity and the adverse action taken by the employer.  Jute v. Hamilton Sundstrand Corp., 420

F.3d 166, 173 (2d Cir. 2005) (quoting McMenemy v. City of Rochester, 241 F.3d 279, 282-83

(2d Cir. 2001)).  Plaintiff has failed to establish a genuine issue of material fact that he was

involved in a form of protected activity.

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-3(a), enumerates the two

ways in which a complainant can establish he or she was engaged in protected activity: either

under the "opposition clause" or the "participation clause."  Under the "opposition clause," a

complainant can establish that he or she was involved in a protected activity when he or she

opposed an employment practice made unlawful under the provisions of Title VII.  42 U.S.C.

---

[5] Both in Defendant's Motion for Summary Judgment, and in Defendant's Reply
Memorandum of Law, Defendant maintains that Plaintiff asserts a claim of disability
discrimination.  A review of the Plaintiff's Amended Complaint and Plaintiff's Affidavit in
Opposition to the Motion for Summary Judgment, however, does not reveal any attempt to assert
a claim of disability discrimination.

§2000e-3(a); <u>Sumner v. United States Postal Service</u>, 899 F.2d 203, 209 (2d Cir. 1990) (noting that the protection of the "opposition clause" extends to an employee's acts of informal protests, such as informal complaints to management, as well as participation in formal protests). Under the "participation clause," a complainant can establish that he or she participated in a protected activity by participating in a proceeding brought under Title VII. 42 U.S.C. §2000e-3(a); <u>Deravin v. Kerik</u>, 335 F.3d 195, 203-04 (2d Cir. 2003).

Between the two avenues, the participation clause has been more broadly interpreted than the opposition clause. <u>See</u> <u>Deravin</u>, 335 F.3d at 203 n.6 (noting that the "opposition clause" has narrower application than the "participation clause"). The Second Circuit has noted that §2000e-3(a)'s language is "expansive and seemingly contains no limitations." <u>Id.</u> at 203. Specifically, an employee is protected under §2000e-3(a)'s participation clause when he or she "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under [Title VII]."

Plaintiff has presented no genuine issue of material fact that he was engaged in protected activity under the "participation clause" to substantiate his claim for retaliation. At the time the Plaintiff filed his July 2003 EEOC complaint, the Plaintiff had not participated in any form of Title VII proceeding. Logically, the EEOC complaint Plaintiff filed in July 2003, itself, cannot serve as the predicate "protected activity" for his retaliation cause of action. The Plaintiff must have been involved in the protected activity *before* suffering an adverse employment action. It is in the July 2003 EEOC complaint that the Plaintiff first raises the specter of a retaliation cause of action. In order for the July 2003 EEOC complaint to be the protected activity Plaintiff participated in, Plaintiff must have been retaliated against *subsequent* to filing that complaint.

Plaintiff asserts no such later retaliation, but rather claims that he suffered retaliation prior to July 2003, during a time period when he was not participating in any Title VII proceeding.

Plaintiff argues, however, that his employer retaliated against him because of the series of internal complaints he made via internal memoranda about the disrespectful and insubordinate actions of one of his co-workers, Ms. Tracy Harris, and his supervisor, Ms. Francine Palazza. Def's Notice of Mot., Ex. D, Plaintiff's Deposition at 70-71. Despite the expansive language of §2000e-3(a)'s "participation clause," Deravin, 335 F.3d at 203, the Second Circuit has categorized such complaints as possible "protected activity" under the narrower "opposition clause." See Kotcher v. Rosa and Sullivan Appliance Center, Inc., 957 F.2d 59, 65 (2d Cir. 1992) (concluding that opposition to a supervisor's sexually harassing behavior via internal complaints is considered protected activity under Title VII).[6]

In order for the Plaintiff to be involved in protected activity under the opposition clause, the Plaintiff must have had a "good faith, reasonable belief that the underlying employment practice [opposed to] was unlawful" under Title VII. Galdieri-Ambrosini v. National Realty & Development Corp., 136 F.3d 276, 292 (2d Cir. 1998) (quoting Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir. 1996)). Additionally, the Plaintiff's employer must have "understood, or reasonably understood, that the [P]laintiff's opposition was directed at conduct prohibited by Title VII." Galdieri-Ambrosini, 136 F.3d at 292. In the instant case, Plaintiff's internal complaints about the "insubordinate conduct" of a co-worker and about his supervisor's

---

[6] Several Circuits, however, have expressly held that such action does *not* constitute protected activity under the "participation clause." See Byers v. Dallas Morning News, Inc., 209 F.3d 419, 428 (5th Cir. 2000); Johnson v. University of Cincinnati, 215 F.3d 561, 581 (6th Cir. 2000); EEOC v. Total System Services, 221 F.3d 1171, 1174 n. 2 (11th Cir. 2000); Brower v. Runyon, 178 F.3d 1002, 1006 (8th Cir. 1999).

critique of his job performance, Def's Notice of Mot., Ex. E,[7] do not rise to the level of protected activity under the "opposition clause."  Plaintiff did not complain of, or oppose actions, such as alleged discrimination, in his internal complaints.  Plaintiff did not even so much as mention the word discrimination in any of his correspondence.[8]  See, e.g., Galdieri-Ambrosini, 136 F.3d at 292 (concluding that the employee's failure to articulate an alleged Title VII discrimination practice in an internal complaint, and the inability of the employee's employer to infer the existence of such discrimination from the employee's internal complaint, removed the internal complaint from the definition of protected activity under the "opposition clause"); Miller v. Edward Jones & Co., 355 F. Supp.2d 629, 643 (S.D.N.Y. 2005) (noting that complaints that are vague and ambiguous and do not state the nature of harassment do not constitute protected activity).  In fact, Plaintiff admits in his deposition that he did not include complaints of discrimination in his correspondence.  See Def's Notice of Mot., Ex. D, Plaintiff's Deposition at 63, lines 2-15; at 82-83, lines 20-6.  Thus, based upon the Plaintiff's memoranda, an employer would not have been able to infer that the Plaintiff opposed or complained of actions allegedly in violation of Title VII because no such discriminatory actions were explicitly stated or even remotely implied.

_____

[7] The internal memoranda Plaintiff asserts he was retaliated against for sending include correspondence to the following people: Richard Thomas, dated August 1, 2002; Joyce Carter, dated August1, 2002; and Francine Palazza, dated September 9, 2002.

[8] In Plaintiff's internal memoranda, Plaintiff complains of "insubordinate and derogatory attacks" and "personal attacks and personal harassment."  See Def's Notice of Mot., Ex. E, Letters from Plaintiff Lynn Jowers to Richard Thomas and Joyce Carter, dated August 1, 2002.  Additionally, Plaintiff recounts specifics instances to bolster these claims.  Plaintiff does not mention in this series of correspondence, however, any racial, ethnic or gender discrimination, or provide even a hint of discrimination in the examples he recounts.

Plaintiff has thus failed to establish a genuine issue of material fact that he was engaged in a form of protected activity under either the "participation clause" or the "opposition clause" of §2000e-3(a). Defendant's motion for summary judgment on this claim must be granted.

2.     Wrongful Termination

Plaintiff also asserts a claim of wrongful termination based upon his race, color and gender under Title VII. Because Plaintiff fails to establish the elements of his wrongful termination claim under the Supreme Court's <u>McDonnell Douglas</u> burden shifting framework, I grant Defendant's motion for summary judgment on this claim.[9]

In order to support his claim for wrongful termination based upon discrimination, Plaintiff must establish a prima facie case for such discrimination under the framework articulated by the Supreme Court in <u>McDonnell Douglas v. Green</u>, 411 U.S. 792 (1973). Under the <u>McDonnell Douglas</u> analysis, the Plaintiff must show that: (1) he is a member of a protected class of persons, (2) he satisfactorily performed the duties of his position, (3) he was subject to

_____

[9] I digress at this point to note that *technically* Plaintiff's wrongful termination claim is not properly before this Court. Under Title VII, the Plaintiff is required to submit all claims of workplace discrimination to the EEOC before filing a lawsuit in federal court. 42 U.S.C. §2000e-5. Plaintiff submitted some of his claims presently before this Court to the EEOC in July 2003, namely his retaliation and workplace harassment claims. <u>See</u> Def's Notice of Mot., Ex. A, Plaintiff's EEOC Charge of Discrimination Form. Plaintiff received his "right to sue" letter on these claims on July 30, 2003. Plaintiff was terminated from employment, however, on August 1, 2003, after he received his "right to sue" letter. Thus, Plaintiff's wrongful termination claim was never presented to the EEOC for analysis. This deficit, however, is not a jurisdictional bar to Plaintiff's claim, <u>see</u> <u>Francis v. City of New York</u>, 235 F.3d 763, 768-69 (2d Cir. 2000) ("presentation of a Title VII claim to the EEOC is not a jurisdictional prerequisite . . ."), and may be waived by the Defendant, <u>id.</u> In the present case, the Defendant did not raise the Plaintiff's failure to comply with Title VII's administrative remedies in their Answer. <u>See</u> Docket Entry #12, Defendant's Verified Answer. Moreover, the Defendant has not raised this issue in its motion for summary judgment. <u>See</u> Defendant's Memorandum of Law. Accordingly, Defendant has waived any defense it may have had regarding the Plaintiff's failure to exhaust his wrongful termination claim with the EEOC before initiating the instant suit in this Court.

an adverse employment action, and (4) the adverse employment action gave rise to an inference

of discrimination.  See McDonnell Douglas, 411 U.S. at 802; Kerzer v. Kingly Manufacturing,

156 F.3d 396, 401 (2d Cir. 1998) (noting that the fourth element of the McDonnell Douglas

burden-shifting analysis may be adapted to the varied types of employment discrimination

actions that arise under Title VII).

It is not disputed that Plaintiff is a member of a protected class of persons: Plaintiff is an

African-American male.  Def's Notice of Mot., Ex. A.  Nor is it disputed for purposes of this

claim that Plaintiff suffered an adverse employment action: Plaintiff was terminated from

Defendant's employment on August 1, 2003.  Def's Notice of Mot., Ex. O, Letter from Joyce

Carter to Robert Lederman, dated August 1, 2003.  There appears to be a dispute, as to whether

the Plaintiff satisfactorily performed his workplace responsibilities.  In addition to this dispute,

the Plaintiff fails to establish a genuine issue of material fact that his termination gives rise to an

inference of discrimination.  Defendant's motion for summary judgment on Plaintiff's wrongful

termination cause of action must be granted.

When assessing whether an employee has satisfactorily performed his or her employment

duties, the courts are often forced to review and rely upon the employer's evaluations.  See Meiri

v. Dacon, 759 F.2d 989, 995 (2d Cir. 1985) (citing Knight v. Nassau County Civil Service

Comm., 649 F.2d 157, 162 (2d Cir. 1981)).  In determining whether the Plaintiff has met his

prima facie case of establishing satisfactory workplace performance, the "ultimate inquiry is

whether an employee's performance meets his [or her] employer's legitimate expectations."  Id.

(quoting Huhn v. Koehring Co., 718 F.2d 239, 244 (7th Cir. 1983)).

At first glance, Plaintiff's employment with the Defendant appears to be problem-free.

Plaintiff received several consecutive years worth of praiseworthy personnel reviews.  See Def's Notice of Mot., Ex. E, Employee Performance Appraisal Records, dated December 1, 1998, December 1, 1999, December 1, 2000, and December 1, 2001.[10]  From the correspondence provided to the Court, however, beginning sometime prior to August 2002, it appears that Plaintiff's relationship with one of his co-workers began to deteriorate.  This deteriorating relationship led to the Plaintiff's placement on probation.  Def's Notice of Mot., Ex. E, Letter from Joyce Carter to Plaintiff Lynn Jowers, dated September 12, 2002.  Additionally, some of the correspondence provided to the Court indicates that the Plaintiff's supervisor, Ms. Francine Palazza, was not satisfied with the Plaintiff's work.  Def's Notice of Motion, Ex. E, Letters from Francine Palazza to Plaintiff Lynn Jowers, dated September 19, 2002 and September 30, 2002.  Given these differing versions regarding the Plaintiff's quality of work, the Plaintiff has not submitted sufficient evidence from which a fact finder could conclude, by a preponderance of the evidence, that he satisfactorily performed his employment duties.

In addition to this uncertainty surrounding the sufficiency of the Plaintiff's work, the Plaintiff cannot establish a prima facie case for wrongful employment discrimination because he has not presented evidence sufficient to establish that his discharge gives rise to an inference of discrimination.  While Plaintiff has produced personal anecdotes of racially charged, verbal exchanges with one of his co-workers, and his supervisor, these incidents are only adduced by the Plaintiff himself during deposition.  Plaintiff has neither produced other supporting evidence of such racial tension, nor provided witnesses to substantiate his claim whose testimony could be

---

[10] Plaintiff's December 2001 Employee Performance Appraisal Record, which was received by the Plaintiff, mentions in passing a dispute with a co-worker, but credits the Plaintiff with "remain[ing] professional during this uncomfortable time."

used as evidence at trial.  Plaintiff's conclusory statements, alone, cannot support a claim of

wrongful termination under Title VII.  See Scwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir.

1997).  Plaintiff must evince such discriminatory intent in connection with his discharge.

According to the record provided to the Court, once the Plaintiff was transferred, and the

Plaintiff subsequent took disability leave, the Plaintiff makes no allegations of discrimination.[11]

Because of an absence of evidence of racial animus, there is no genuine issue of material fact as

to whether the Plaintiff's termination gives rise to an inference of discrimination.

Viewing Plaintiff's claims most generously, and assuming that Plaintiff could establish a

prima facie case of discriminatory treatment in violation of Title VII, under McDonnell Douglas,

the burden of proof would then shift to the Defendant to articulate a "legitimate, clear, specific

and non-discriminatory reason for discharging the [Plaintiff]."  Kerzer, 156 F.3d at 401.  In the

present case, the Defendant is able to meet this burden of proof.  On or about August 1, 2003, the

Defendant received information from the fingerprint analysis and criminal background check of

the Plaintiff revealing that the Plaintiff plead guilty to fifth degree criminal sale of a controlled

substance on June 16, 1997.  Def's Notice of Mot., Ex. O.  This information was contrary to the

statement the Plaintiff made on his employment application, on which he had indicated that – as

of December 2003 – he had not been convicted of a felony within the past seven years.  Def's

Notice of Mot., Ex. J.

Pursuant to the Plaintiff's employment agreement, the Plaintiff was an at-will employee

who could be terminated at any time and for any reason.  Def's Notice of Mot., Ex. J.  The

---

[11] The last of Plaintiff's correspondence provided to the Court is dated October 1, 2002.
Plaintiff was terminated on August 1, 2003.

disclosure of the Plaintiff's concealed criminal history, in contradiction to the information he provided on his employment application, is a sufficient race-neutral and legitimate reason to terminate the Plaintiff, thus refuting any prima facie case the Plaintiff may have established under the first phase of the McDonnell Douglas burden shifting analysis. There is no genuine issue of material fact that Plaintiff's concealed criminal background is a legitimate, specific, non-discriminatory basis to terminate him for cause.

Upon Defendant's assertion of a race-neutral reason for discharging the Plaintiff, the Plaintiff once again bears the burden of proof under the McDonnell Douglas framework to establish that the Defendant's race-neutral reason for discharging him was a pretext for discrimination. McDonnell Douglas, 411 U.S. at 804. In order to show that the Defendant's justification for the Plaintiff's termination was pretextual, the Plaintiff must establish both that the Defendant's justification was false and that discrimination was the real motivation for the Plaintiff's discharge by a preponderance of the evidence. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515 (1993).

Given the absence of evidence establishing a prima facie case of wrongful discrimination, *a fortiori*, Plaintiff cannot establish that the Defendant's non-discriminatory purpose for terminating the Plaintiff – his hidden and concealed criminal record – was a pretextual rationale for discriminating against the Plaintiff. It is clear from the evidence in the record, and the absence of sufficient evidence establishing a racially charged environment, that the Defendant's termination of the Plaintiff was in response to the Plaintiff's falsified employment action, and not a guise for discrimination.

Because the Plaintiff has not submitted sufficient evidence to establish a genuine issue of

material fact both that the Defendant's reason for terminating him was false and that discrimination was the real motive behind his discharge, Defendant's motion for summary judgment on the wrongful termination claim must be granted.

       3.      <u>Workplace Hostility & Harassment</u>

Lastly, Plaintiff asserts a Title VII claim against the Defendant for an abusive and hostile workplace environment. In order to establish a valid Title VII workplace harassment claim, the Plaintiff must establish that the harassment the Plaintiff endured was "sufficiently severe or pervasive to alter the conditions of the [Plaintiff's] employment and create an abusive working environment." <u>Fairbrother v. Morrison</u>, 412 F.3d 39, 48 (2d Cir. 2005) (quoting <u>Alfano v. Costello</u>, 294 F.3d 365, 373 (2d Cir. 2002) (internal citations omitted)). In meeting this standard, the Plaintiff must "show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of [the Plaintiff's] employment were thereby altered." <u>Id.</u> This showing involves both objective and subjective elements. <u>Id.</u> Specifically, the Plaintiff must establish that the complained-of activity was severe enough to create an objectively hostile environment, and must also establish that he himself subjectively perceived the workplace environment to be abusive. <u>Harris v. Forklift Sys. Inc.</u>, 510 U.S. 17, 21 (1993); <u>Fairbrother</u>, 412 F.3d at 48. In assessing whether the Plaintiff can establish that his workplace was a hostile environment, this Court must consider the totality of the factors presented. <u>See Harris</u>, 510 U.S. at 23.

In addition to these burdens, the Plaintiff also bears the burden of imputing liability for the hostile workplace to the Defendant-employer based on a theory of vicarious liability. <u>Fairbrother</u>, 412 F.3d at 48-49. Where – as in this case – the Plaintiff asserts claims of a hostile

workplace environment attributable to the actions of both a supervisor and a co-worker, in order to impute liability to the Defendant, the Plaintiff must establish vicarious liability under separate theories for the allegedly harassing conduct of his supervisor and co-worker.  Id. at 49 (explaining the different standards of vicarious liability used to impute liability on an employer based upon the harassment of a supervisor and co-worker).

To impute liability on the Defendant for the actions of a co-worker, the Plaintiff must show that the Defendant knew, or reasonably should have known, about the Plaintiff's harassment complaint, yet failed to act.  Id. (quoting Petrosino v. Bell Atlantic, 385 F.3d 210, 225 (2d Cir. 2004)).  Differing from vicarious liability based upon a co-worker's actions, the Plaintiff may establish vicarious liability for a supervisor's actions in one of two ways.  First, the Plaintiff may demonstrate that the supervisor's behavior resulted in a "tangible employment action" against the Plaintiff.  Burlington Indus. v. Ellerth, 524 U.S. 742, 765 (1998); Fairbrother, 412 F.3d at 49.  Such evidence of a tangible employment action will, ipso facto, make the employer vicariously liable.  Petrosino v. Bell Atlantic, 385 F.3d, 210, 225 (2d Cir. 2004) (quoting Mack v. Otis Elevator Co., 326 F.3d 116, 214 (2d Cir. 2003)).  Tangible employment actions include, *inter alia*, discharge, demotion or undesirable re-assignment.  Burlington Indus., 524 U.S. at 765.

Tangible employment action, however, is not the sine qua non to establish vicarious liability based upon a supervisor's actions; absent such evidence, the Defendant may still be vicarious liable for a hostile environment based upon a supervisor's actions.  This second avenue for establishing an employer's vicarious liability based upon the actions of a supervisor, however, is subject to an affirmative defense.  Fairbrother, 412 F.3d at 49.  The defendant-

employer may defeat the imputation of vicarious liability by proving that (1) the Defendant "exercised reasonable care to prevent and correct promptly any . . . harassing behavior," and (2) "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Fairbrother, 412 F.3d at 49 (quoting Burlington Indust v. Ellerth, 524 U.S. 742, 765 (1998)).

In the present case, Plaintiff has not presented a genuine issue of material fact regarding the existence of an abusive or hostile workplace cause of action based upon the actions of either the Plaintiff's supervisor or his co-worker.  Accordingly, I need not reach the question of imputing liability on the Defendant for the actions of its employees.

Although in deposition Plaintiff recounts several instances of his superior and co-worker using racial epithets, see Def's Notice of Mot., Ex. D, Plaintiff's Deposition at 62-64; at 80-83, such racial animus is never addressed in the array of correspondence submitted to the court between the Plaintiff and several of the Defendant's employees.  The correspondence provided to the Court establishes, at best, that the Plaintiff believed his co-worker's actions to be improper and insubordinate.[12]  Although the Plaintiff may have felt his job security was threatened by his supervisor, such threats appear to be derivative of his supervisor's complaints about the quality of the Plaintiff's work and execution of job responsibilities, not his race, color or gender.  See Def's Notice of Mot., Ex. E, Letters from Francine Palazza to Plaintiff Lynn Jowers, dated September 19, 2002, September 30, 2002 and October 5, 2002.

---

[12] Although in deposition the Plaintiff argued that he authored his internal correspondence with his co-worker and supervisor's discriminatory remarks and actions in mind, see Def's Notice of Mot., Ex. D, Plaintiff's Deposition at 61-62, 82-83, even the most generous and liberal reading of the correspondence provided does not indicate the presence of any racial, ethnic or gender discrimination.

It is quite clear that Plaintiff did not enjoy the most cordial of relationships with either his co-worker or his supervisor. Such discord, however, is not a valid ground to assert a hostile workplace claim under Title VII. The essence of such a claim is that "discriminatory intimidation, ridicule, and insult," Fairbrother, 412 F.3d at 48, – i.e. actions of harassment – altered the working conditions of the Plaintiff's employment. See Dawson v. County of Westchester, 373 F.3d 265, 274 (2d Cir. 2004) (focus in hostile workplace cause of action is whether workplace atmosphere undermined plaintiff's ability to perform job). Title VII is not designed to serve as a code of civility to govern workplace professionalism; its function is to protect employees from harassment that alters the workplace environment. See, e.g., Petrosino, 385 F.3d at 223.

Plaintiff has thus failed to establish a genuine issue of material fact that the Plaintiff endured a hostile and abusive workplace environment. Although Plaintiff may have subjectively perceived his co-workers and supervisor's conduct to be harassment, he has failed to establish evidence of the equally important – and required – objective element.[13] Additionally, Plaintiff has supplied no evidence to establish how the alleged harassment changed or altered the Plaintiff's working conditions. See Dawson, 373 F.3d at 274 (focus in hostile workplace cause of action is whether the atmosphere has undermined the Plaintiff's ability to perform his or her

---

[13] In reaching this conclusion, the Court is mindful of the Second Circuit's admonitions when granting summary judgment in employment discrimination cases where the intent of the employer is at issue. See Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997) ("affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination" because of the absence of evidence that would otherwise demonstrate an employer's discriminatory intent). Despite this standard, this Court nevertheless concludes that the Plaintiff has only asserted conclusory allegations, which alone, are insufficient to defeat a motion for summary judgment. Id. (citing Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985)).

job). Plaintiff has offered no evidence illustrating his inability to complete his job duties due to the alleged abusive environment.

While it is unfortunate that Plaintiff did not enjoy a more congenial working relationship with his supervisor and co-worker, such friction – which does not implicate any form of Title VII discrimination – cannot support a hostile environment cause of action. Accordingly, because the Plaintiff has established no genuine issue of material fact regarding his workplace harassment cause of action, Defendant's motion for summary judgment on this claim must be granted.

## CONCLUSION

For the aforementioned reasons, Defendant's motion for summary judgment is granted *in toto*.

Dated:      November 22, 2005
           White Plains, New York

SO ORDERED

Lisa Margaret Smith
United States Magistrate Judge
Southern District of New York

21